# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

WILLIAM EDWARD MATUREN,

    Plaintiff,                    CASE NO. 06-CV-15126

v.                                   DISTRICT JUDGE ROBERT H. CLELAND
                                    MAGISTRATE JUDGE CHARLES BINDER

LOWE'S HOME CENTERS, INC.,

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S AMENDED MOTION TO DISMISS IN PART OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO DISMISS COUNTS 1 AND 2
(Dkt. 14 & 27)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motions be **GRANTED**.

## II.    REPORT

### A.    Introduction

By order of United States District Judge Thomas Ludington, this sexual harassment employment case was referred to the undersigned Magistrate Judge for pretrial case management on November 20, 2006. (Dkt. 3.) On February 22, 2007, the case was reassigned from Judge Ludington to U.S. District Judge Robert Cleland. (Dkt. 15.) On March 1, 2007, Judge Cleland referred all pretrial matters to the undersigned. (Dkt. 16.)

Plaintiff was discharged from employment by Defendant Lowe's Home Centers, Inc. ("Lowe's") on October 13, 2003. (Ans. to Am. Compl., Dkt. 13 ¶ 1.; Dkt. 20, Ex. 007.) Plaintiff initially filed the instant action in Saginaw County Circuit Court on October 10, 2006, and the case was removed to this Court on November 15, 2006. (Dkt. 1.) Plaintiff's Amended Complaint asserts the following claims: (1) Wrongful Termination; (2) Retaliation; (3) Defamation; (4) Defamation; (5) Defamation; (6) Implied Promises; (7) Breaches of Good Faith and Fair Dealing; (8) Blacklisting; and (9) Wrongful Imprisonment. (Am. Compl., Dkt. 12.)

Two motions are before the Court. Defendant's motion to dismiss (Dkt. 27) addresses Counts 1 and 2 of the Amended Complaint, and Defendant's motion to dismiss or in the alternative for summary judgment (Dkt. 14) addresses counts 3 through 9. Consequently, when both motions are considered, all claims raised in the Amended Complaint are addressed.

B.    **Plaintiff's Claims**

Plaintiff contends that he was retaliated against after he complained that the store manager (Mike Smith, "store manager") had sexually harassed him because his wife wrote an e-mail "complaining about issues that she did not like at the store and that she was not happy with certain things and people in the store." (Dkt. 12 ¶ 2, retaliation.) Plaintiff alleges that the store manager told him he "should learn to control [his] wife and keep her in her place." (*Id.*)[1]

---

[1] Counts 1 ("wrongful termination") and 2 ("retaliation") of Plaintiff's Amended Complaint do not expressly mention Title VII, nor any other federal or state statute, but simply refer to the concepts of sexual harassment, hostile work environment, and whistle-blowing. Although Count 1 is labeled "wrongful termination," Plaintiff does not mention any breach of contract or termination in violation of any express or implied "just cause" employment relationship that would arise solely under Michigan law. When the original complaint was removed, Defendant relied on the federal court's diversity of citizenship jurisdiction. (Dkt. 1.) However, as Defendant notes, Plaintiff's motion to amend the complaint filed on April 20, 2007, does refer to Title VII of the Civil Rights Act with respect to his wrongful discharge and retaliation claims, i.e., Counts 1 and 2. (Def. Mot. to Dismiss, Dkt. 27 at 2; Pl. Mot. to Amend, Dkt. 22 at 5.) Consequently, I will construe Counts 1 and 2 of Plaintiff's Amended Complaint as setting forth claims under Title VII for gender discrimination, sexual harassment, hostile work environment and retaliation. *See West v. Adecco Employment Agency*, 124 Fed. App'x 991, 993 (6th Cir. 2005) (construing *pro se* complaint as raising claims under Title VII where plaintiff "did not specify a federal or state law in his written complaint" but where the attached right-to-sue letter which referenced Title VII was sufficient to indicate plaintiff's intention to

Plaintiff also avers that a manager, Linda Windt, "called [him] a psycho" "in a public forum [i.e., the store]." (*Id.* ¶ 3, defamation.) Plaintiff further alleges that after he was fired, when he attempted to return to the store as a customer, he was told to leave and was "hand walked from the building in front of 40 witnesses . . . [and that this] activity logically conveyed to all passerby's [sic] that [he] was a thief and that [he] was being arrested." (*Id.* ¶ 5, defamation.)

Plaintiff also complains that although he "had very positive evaluations" and advanced in the company, he was terminated without the "normal policy . . . [which utilized a] graduated scale of discipline." (*Id.* ¶ 6; implied promises.) Plaintiff asserts that the store manager's actions against him were motivated by a desire to advance another person, Theresa Domke. (*Id.* ¶ 7; breach of good faith and fair dealing.)

Plaintiff further avers that he was "wrongfully detained and imprisoned [during his] final days at the store" because "as soon as he entered the building [he] was walked to the office in back and told that [he] was not allowed to leave" and was even accompanied to the restroom. (*Id.* ¶ 9; wrongful imprisonment.) Finally, Plaintiff contends that a Flint store manager told him that he would "never work for the Lowe's corporation again" and that store manager Mike Smith had "blacklisted" him. (*Id.* ¶ 8; blacklisting.)

C.   **Defendant's Motions**

Defendant filed its first motion to dismiss in part on January 12, 2007. (Dkt. 7.) Soon thereafter, Plaintiff filed an Amended Complaint (Dkt. 12) and Defendant filed the amended motion to dismiss in part or in the alternative for summary judgment that is the subject of this Report. (Dkt. 14.) In addition, Defendant subsequently moved to dismiss Counts I and II for

---

sue under the federal statute). I further note that Defendant has impliedly construed the Amended Complaint in the same manner. (Dkt. 27.)

Plaintiff's failure to file suit within 90 days of receipt of his right-to-sue notice from the Equal Employment Opportunity Commission ("EEOC"). (Dkt. 27.) Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation on the pleadings without oral argument.

**1.     Motion Standards**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a case where the complaint fails to state a claim upon which relief can be granted. Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* ___U.S.___, 127 S. Ct. 1955, 1974 (2007).[2] *Twombly* did not change the notion that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted) (emphasis added). This

---

[2]Although one district court in the Sixth Circuit has restricted *Twombly*'s application to antitrust conspiracy cases, the majority have not. *Weisbarth v. Geauga Park District*, ___ F.3d ___, 2007 WL 2403659, No. 06-4189 (6th Cir. Aug, 24, 2007) (declining to resolve the scope of the *Twombly* decision issue because not necessary to do so).

circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' " *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Thus, the documents that are central to the complaint and are attached to the instant motions, e.g., the EEOC decision, may be referred to without converting the motions to summary judgment motions.

In this case, Plaintiff is not represented by counsel. The Supreme Court has held that the federal courts are required to liberally construe the pleading of a *pro se* plaintiff and to hold it to a less stringent standard than a similar pleading drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, even a *pro se* complaint must assert more than bare assertions of legal conclusions and must contain either direct or inferential allegations regarding all the material elements of each claim. *See Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).

**2. Counts 1 and 2 of the Amended Complaint**

**a. Plaintiff Failed to Comply with the EEOC 90-Day Filing Requirement**

Defendant argues that Plaintiff's Amended Complaint should be dismissed because Plaintiff failed to file the instant lawsuit within 90 days from his receipt of the right-to-sue letter from the EEOC. (Dkt. 27.) The final agency decision by the EEOC was made on January 10, 2006 ("Dismissal and Notice of Rights"), and the decision itself notifies Plaintiff that he must file any lawsuit based on Title VII[3] within 90 days. ( Dkt. 27, Ex. B.) Indeed, 42 U.S.C. § 2000 e-16(c), states that "within 90 days of receipt of notice of final agency action . . . or after one

---

[3]The notice also included the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA") in its 90-day notice, neither of which are raised in the instant case.

hundred and eighty days from the filing of the initial charge with the department, agency . . . an employee . . . may file a civil action as provided in section 2000e-5 of this title." The notice lists Plaintiff's address in Saginaw, Michigan, and I note that it is the same address provided by Plaintiff to this Court, as reflected in the Court's docket. Nonetheless, Plaintiff contends that he "never did receive a right to sue letter." (Pl. Resp., Dkt. 36 at 3.) Perhaps Plaintiff did not read the "Dismissal and Notice of Rights" or perhaps he did read it but did not consider it to be synonymous with a "right-to-sue" or "RTS" letter, which it is. (Dkt. 27, Ex. 4 ("Dismissal and Notice of Rights" letter).)[4] Defendant, however, received the RTS letter and attached it to its brief in support of the motion to dismiss Counts 1 and 2. (Dkt. 27, Ex. B.)

The record shows that Plaintiff filed the instant action in state court on October 10, 2006, and it was removed to this federal court on November 15, 2006. (Dkt. 1.) October 10, 2006, is nine months (or approximately 270 days) from the EEOC's notice and is far beyond the 90 day requisite stated in the notice and provided in 42 U.S.C. § 2000e-16(c).

"The Sixth Circuit has resolved that notice is *given*, and hence the ninety-day limitation term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000) (emphasis in original). This holding comports with 20 C.F.R. § 422.210(c)'s provision that "the date of receipt of notice . . . shall be presumed to be

---

[4] 42 U.S.C. § 2000e-5(f)(1); *Sundaram v. Brookhaven National Laboratories*, 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006) ("Before a plaintiff may assert such claims in a lawsuit, the plaintiff must receive a notice, commonly known as a right-to-sue letter, from the EEOC.").

6

5 days after the date of such notice." *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 475 (6th Cir. 1986).

Plaintiff has not provided any proof to rebut the presumption that notice, i.e., the RTS letter, was received January 15, 2006, five days after the date on the notice. *Graham-Humphreys, supra*. I suggest that the fact that Defendant received the RTS letter and attached it to its brief weighs in favor of the presumption and against Plaintiff's contention that he did not receive the same. (Dkt. 27, Ex. B.) I further suggest that where proof is absent, the presumption stands. *Rucker v. Potter*, 215 Fed. App'x 406, 408 (6th Cir. 2007) (applying "rebuttable presumption that mail is received by the person to whom it is addressed and that the 90 day limit commences five days after the right to sue letter is mailed" and finding that plaintiff had failed to rebut the presumption "with proof by the claimant that he did not in fact receive notification within that period" where the "record before this court is unclear whether the EEO decision was received by [plaintiff] and, if so, when.").

"Absent grounds for equitable tolling, the district court is powerless to extend the ninety-day statutory period for even a single day." *Coleman v. Bronson Methodist Hospital*, No. 4:05-cv-141, 2006 WL 3391404, *10 (W.D. Mich. Nov. 21, 2006) (unpublished) (citing *Peete v. American Standard Graphic,* 885 F.2d 331, 331-32(6th Cir. 1989)).

I suggest that equitable tolling is not appropriate in the instant case. The elements of equitable tolling are: (1) lack of actual notice; (2) lack of constructive knowledge; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the notice requirement. *E.E.O.C. v. Kentucky State Police Dept.*, 80 F.3d 1086, 1094 (6th Cir. 1996). "This Circuit has repeatedly cautioned that equitable tolling relief should be granted only sparingly." *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th

Cir. 2001). Therefore, equitable tolling should not apply for the sole reason that plaintiff has assumed the risk of self-representation and was unfamiliar with the process. *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("We have held that neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling") (cited with approval in *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002)). In the instant case, there is no evidence to suggest that the RTS letter was not received by Plaintiff and there is evidence that Defendant received the same. Therefore, it is arguable that Plaintiff had constructive knowledge. Additionally, I suggest that his failure to understand the notice – here in the form of a right-to-sue letter – is a risk assumed by self-representation that precludes the invocation of equitable tolling.

Plaintiff's argument in applying the above five factors centers around the fact that he "does not have a law degree" and although "ignorance is no excuse . . . a certain amount of leeway has to be understood." (Dkt. 36 at 3.) Since unfamiliarity with the legal process is insufficient to warrant equitable tolling, I suggest that Defendant's motion to dismiss Counts 1 and 2 of the Amended Complaint be granted for failure to comply with 42 U.S.C. § 2000e-16(c).

    **b.    Alternatively, Counts 1 and 2 Fail on their Merits**

Although the recommendation above is dispositive of the pending motion to dismiss (Dkt. 27), in the interest of completeness and judicial economy on review, Counts 1 and 2 will be substantively considered.

        **i.    Count 1 - Wrongful Termination**

Plaintiff avers that he was wrongfully terminated and retaliated against because his wife sent an e-mail to the store manager that was critical of Defendant's store and personnel. (Dkt. 12 ¶ 2.) Plaintiff further alleges that the store manager told him he "should learn to control [his] wife

and keep her in her place." (*Id.*) Inferentially, had Plaintiff "controlled" his wife, she would not have sent the unfavorable message to the manager.

Title VII prohibits employers from discharging, or otherwise discriminating against, an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005). The elements of a *prima facie* case of discrimination under Title VII are: (1) plaintiff is a member of a protected class, (2) he was subject to an adverse employment action, (3) he was qualified for the position at issue, and (4) he was replaced by someone outside the protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 470 (6th Cir. 2004); *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 728 (6th Cir. 2004).

The salient issue in a Title VII claim of discrimination is whether the plaintiff was singled out because of his membership in a protected class and treated less favorably than those outside the class, not whether the plaintiff was treated less favorably than "someone's general standard of equitable treatment." *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir. 1988) (citations omitted). Plaintiff has claimed that he was punished because of his wife's actions (or his failure to control his wife's actions). Plaintiff has not alleged that a difference in treatment occurred based on his membership in a protected class, i.e., his gender. Plaintiff has not asserted that the store manager (or any other agent of Defendant) was motivated by a hostility toward or prejudice against a protected class. Thus, I suggest that Plaintiff has failed to plead sufficient facts to withstand a motion to dismiss.

Even if Plaintiff's allegations were to be construed as a claim under the sex-stereotyping theory of liability embraced by the United States Supreme Court in *Price Waterhouse v. Hopkins*,

9

490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), I suggest that Plaintiff's allegations fall short of a viable claim. At most, Plaintiff has averred facts that demonstrate that the store manager held a chauvinistic view that men should control their wives' behavior and that, since Plaintiff was unable to do so, he did not live up to the store manager's conception of masculinity. However, the Sixth Circuit has interpreted the *Price Waterhouse* theory as inapplicable to scenarios where the "gender non-conforming behavior . . . is not behavior observed at work or affecting his job performance." *Vickers v. Fairfield Medical Center,* 453 F.3d 757, 763 (6th Cir. 2006) (granting motion to dismiss where plaintiff's co-workers called him "fag" and other derogatory names, simulated sex acts and photographed and displayed them, shoved a sanitary napkin in his face, noting that the harassers were not motivated by a sexual desire for plaintiff nor by general hostility for men).

To the extent that Plaintiff's Amended Complaint can be construed to assert a claim of hostile work environment, it is also legally deficient, I suggest. Under Title VII, a *prima facie* case of hostile work environment requires that plaintiff show that the unwelcome harassment occurred and that it was based upon the plaintiff's membership in a protected class. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999).[5] In other words, plaintiff must show that "but for" his membership in the protected class, he would not have been the object of the harassment. *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002) (abrogated on other grounds by *White v. Columbus Metro Housing Auth.*, 429 F.3d 232, 240-41 (6th Cir. 2005)). This requirement is no less relevant to asserted claims of same-sex

---

[5]The complete elements of a *prima facie* case are: (1) plaintiff was a member of a protected class; (2) plaintiff was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed, unreasonably, to take prompt and appropriate corrective action. *Fenton*, 174 F.3d at 830.

10

harassment. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998); *Baugham v. Battered Women, Inc.* 211 Fed. App'x 432, 438-40 (6th Cir. 2006).

For the same reasons as stated above, I suggest that Plaintiff has not plead sufficient allegations that his treatment was based on membership in a protected class rather than a personality conflict with his co-workers and manager. I further suggest that Plaintiff has not plead sufficient facts showing harassment that was sufficiently severe or pervasive to create a hostile work environment. As noted in the Sixth Circuit, "Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing' are not sufficient to establish liability." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005) (citations omitted). Here, Plaintiff does not aver that the store manager ever physically threatened him and I suggest that his comments that Plaintiff should control his wife are not sufficiently severe, even if frequent, to alter the workplace atmosphere into one of hostility.

### ii. Count 2 – Retaliation

To demonstrate a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in activity protected by Title VII, (2) this exercise of protected rights was known to the defendant, (3) the defendant thereafter took an adverse employment action against the plaintiff or the plaintiff was subjected to severe or pervasive retaliatory harassment by the supervisor, and (4) there was a causal connection between the protected activity and the adverse employment action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000).

One of the key elements of a *prima facie* case of retaliation is that there was a causal connection between activity protected under Title VII and the adverse employment action. *See Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). Here, Plaintiff is

11

precluded from arguing that the adverse employment action was in retaliation for filing a charge with the EEOC, because did not file the charge until after his employment was terminated on October 13, 2003. Consequently, I suggest that any retaliation claim should be dismissed on this ground alone.

I further suggest that even if Plaintiff alleged retaliation based on his gender, Plaintiff has not shown that the alleged incidents are part of the same unlawful practice. *See Morgan,* 536 U.S. at 123; *Sharpe v. Cureton*, 319 F.2d 259, 268 (6th Cir. 2003) (mere discriminatory treatment is insufficient; plaintiffs must show that the employer's discrimination against the whole class was "standard operating procedure").

### 3.     Counts 3 - 9 of the Amended Complaint – State Law Claims

Since the original complaint was removed to this Court on the basis of diversity jurisdiction (*see* Dkt. 1), this Court continues to have jurisdiction over the state law claims, regardless of the presence or absence of any federal claims. 28 U.S.C. § 1332.

#### a.     Defamation (Counts 3, 4, and 5) and Blacklisting (Count 8)[6]

Plaintiff alleges that he was defamed by the following: (1) when a manager, Linda Windt, "called [him] a psycho" in "a public forum [i.e., the store]"; and (2) when he attempted to return to the store as a customer, was told to leave, and was "hand walked from the building in front of 40 witnesses . . . [which] logically conveyed to all passerby's [sic] that [he] was a thief and that [he] was being arrested." (Dkt. 12 ¶¶ 3-5.)

---

[6]Since there is no such action as "blacklisting" and the allegations under this Count parallel those cited under the Defamation Counts, I will treat these claims as one.

I suggest that Defendant is correct in asserting that Plaintiff's defamation claims are time-barred under the statute of limitations in Michigan. Michigan law provides that libel and slander claims be brought within one year of the alleged tortious conduct. MICH. COMP. LAWS § 600.5805(9). Here, the alleged defamation occurred on October 13, 2003 (Dkt. 12 ¶ 4), and Plaintiff did not file this action in the Saginaw County Circuit Court until October 10, 2006, almost three years later.

Moreover, even if the claims were to be substantively addressed, I suggest that Plaintiff has not averred facts giving rise to a claim for defamation. The elements of the tort of defamation are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by the publication (defamation *per quod*). *Mitan v. Campbell*, 474 Mich. 21, 24 (2005); *Kevorkian v. American Medical Ass'n*, 237 Mich. App. 1, 8-9 (1999); *Ireland v. Edwards*, 230 Mich. App. 607, 614 (1999).

I first suggest that Defendant is correct in pointing out that being escorted physically out of the building is an action and is not a statement that could be the subject of a defamation claim. Second, I suggest that the store manager's comment that Plaintiff was a "psycho" represents a subjective opinion or hyperbole, not an actionable factual matter. *Ireland*, 230 Mich. App. at 614; *Lakeshore Community Hosp., Inc. v. Perry*, 212 Mich. App. 396, 402 (1995); *Kevorkian*, 237 Mich. App. at 6 ("Subjective assertion[s]" are not actionable, while statements regarding "objectively verifiable event[s]" may be).

Finally, Plaintiff alleges that a Flint store manager told him that he would "never work for the Lowe's corporation again" and that store manager Mike Smith had "blacklisted" him. (Dkt.

13

12 ¶ 8; blacklisting.) I suggest that any communications made to managers at other Lowe's stores would fall under the employer's qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter. *Sias v. General Motors Corp.*, 372 Mich. 542, 548 (1964); *Patillo v. Equitable Life Assur. Society of U.S.*, 199 Mich. App. 450, 454-55 (1992).

      **b.**      **Implied Promises (Count 6) and Wrongful Termination (Count 1)[7]**

Plaintiff complains that although he "had very positive evaluations" and advanced in the company, he was terminated without the "normal policy . . . [which utilized a] graduated scale of discipline." (Dkt 12 ¶ 6.) Construing the complaint most favorably to the Plaintiff, it appears he is attempting to assert a just cause employment relationship based either on previous favorable evaluations or a general, but unwritten, policy of graduated discipline. I suggest that neither theory is viable.

In Michigan, employment is presumptively terminable at the will of either party. *Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 163 (1998). The presumption may be rebutted by: (1) proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause; (2) a clear and unequivocal express agreement, either written or oral, regarding job security, or (3) an implied contractual provision or "legitimate expectation" of job security resulting from the employer's policies and procedures. *Id.* at 164-65. Plaintiff has not alleged that he had a contract of employment or that a policy manual governed disciplinary procedures and thus, provided him with a legitimate expectation of job security. I suggest that Plaintiff's contention that he was given positive reviews is a mere "commendation," " subjective

---

[7]The facts alleged under Count 1 actually address Title VII and have been construed as such by the parties but to the extent that the phrase "wrongful termination" is relevant, this section of the Report addresses wrongful termination in substance.

expectancy on the part of the employee" or an "optimistic hope of a long relationship" that is insufficient to create a jury question as to whether a just-cause employment has been created. *Rood v. General Dynamics Corp.*, 444 Mich. 107, 135 (1997); *Schwartz v. Mich. Sugar Co.*, 106 Mich. App. 471, 478 (1981); *Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 640 (1991).

I further suggest that Plaintiff's observations that Defendant generally used a graduated system to discipline its employees without evidence that Defendant communicated this policy to its employees is insufficient to imply a legitimate expectation of job security. *Touissaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 613 (1980) (noting that the implied contract may arise when an "employer chooses to establish such policies and practices and makes them known to its employees").

### c. Breach of Good Faith and Fair Dealing (Count 7)

Plaintiff contends that the store manager's actions against him were motivated by a desire to advance another person, Theresa Domke. (*Id.* ¶ 7.) I suggest that Defendant properly asserts that Michigan law does not recognize a claim for breach of the implied covenant of good faith and fair dealing in the employment context. *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 35 (2006); *Bell Isle Grill Cforp. v. Detroit*, 256 Mich. App. 463, 476 (2003).

### d. Wrongful Imprisonment (Count 9)

I suggest that Defendant is correct in asserting that this claim is also time barred. Michigan law provides that a claim for false imprisonment be brought within two years. The alleged events took place on the day Plaintiff was terminated from employment, October 13, 2003, and when he was escorted off the premises, November 1, 2003, nearly three years before the filing of this action on October 10, 2006. (Dkt. 12 ¶¶ 4, 5; Dkt. 20 (Pl. Resp.) at 8; MICH. COMP. LAWS § 600.5805(2)).

I further suggest that even if the merits were to be addressed, the result would be the same. Plaintiff avers that he was "wrongfully detained and imprisoned [during his] final days at the store" because "as soon as he entered the building [he] was walked to the office in back and told that [he] was not allowed to leave" and was even accompanied to the restroom. (*Id.* ¶ 9.) The elements of the tort of false imprisonment are: (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person is conscious of his confinement. *Walsh v. Taylor*, 263 Mich. App. 618, 626 (2004).

I suggest that the instant complaint fails to allege that Plaintiff was confined or that Defendant intended to confine him. Being escorted or accompanied away from a business is not tantamount to confinement. *Moore v. City of Detroit*, 252 Mich. App. 384, 387-88 (2002) (no false imprisonment where employer escorted plaintiff employee off the premises). In addition, even if Defendant's agents told Plaintiff he could not leave the office (or go anywhere unescorted), those commands were made in the context of Plaintiff's employment, which an employer has the authority to do. *Hess v. Wolverine Lake*, 32 Mich. App. 601, 604 (1971) ("false" imprisonment means without right or authority to do so and employer's have such authority). Plaintiff has not alleged that he was held for investigative purposes, under potential arrest, or under any similar circumstance that could give rise to the averred tort.

### 4. Conclusion

For the reasons stated above, I recommend that Defendant's motions to dismiss be granted and that the entire case be dismissed.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                              s/ *Charles E Binder*
                                                              CHARLES E. BINDER
Dated: September 18, 2007                       United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Lawrence J. Murphy and Elizabeth W. Skaggs, and on William Edward Maturen by first class mail, and served on U.S. District Judge Cleland in the traditional manner.

Date: September 18, 2007                      By     s/Patricia T. Morris
                                                                 Law Clerk to Magistrate Judge Binder